UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62676-CIV-WILLIAMS/SIMONTON

**B.M.I. INTERIOR YACHT REFINISHING,
INC., et al.,**

    Plaintiffs,
v.

**M/Y CLAIRE,**

    Defendant.
_____/

## ORDER FOLLOWING INFORMAL DISCOVERY HEARING

This matter was before the undersigned Magistrate Judge upon Intervenor Plaintiff Nautical Specialists, Inc.'s Notice of Hearing Regarding Inspection of Vessel, ECF No. [230].  Discovery is referred to the undersigned by the Honorable Kathleen M. Williams, the District Judge assigned to the case, ECF No. [86].  An informal discovery hearing was held on the dispute wherein the Parties presented their respective arguments.  The undersigned directed the Defendant to submit the document at issue to the undersigned for an *in camera* review and took the matter under advisement.

For the following reasons, and based upon a review of the document, the undersigned orders that on or before July 22, 2015, Defendant M/Y Claire shall disclose certain data contained in the September 13, 2013 Report authored by Guy Clifford to Plaintiff Nautical Specialists, Inc., as set forth below in this Order.

    I.    **DISCOVERY DISPUTE**

        A.    **Background**

The instant dispute involves Nautical Specialist's Inc.'s ("Nautical") request to compel Defendant M/Y Claire and Turbulent Marine ("M/Y Claire") to produce an expert

report and expert correspondence in response to Nautical's Request for Production.[1] According to the Notice of Hearing, M/Y Claire objected to producing certain documents requested by Nautical on the basis of the work product doctrine, ECF No. [230]. The documents at issue are identified in M/Y Claire's privilege log as reports from Guy Clifford (GC) to Defendant's Attorneys. The Privilege Log indicates that the materials are withheld based upon Work Product protection (WP) and Expert Trial Preparation (TP).

*September 2013 Report Prepared by Guy Clifford*

At the discovery hearing on the issue, Nautical explained that in August 2013, Guy Clifford, a surveyor from Patton Marine, was asked by the owner of M/Y Claire to inspect and survey the vesselregarding work that had been performed by various contractors. Plaintiff Nautical was the contractor that performed work on the M/Y Claire's air conditioning system. At Mr. Clifford's request, Rob Miles, the owner of Nautical, accompanied Mr. Clifford during the inspection. Upon completion of the survey report of the inspection ("Clifford Report"), Mr. Clifford purportedly gave the report to the captain of the M/Y Claire, Captain Howard. Plaintiff Nautical contends that Captain Howard thereafter read that report to Mr. Miles over the telephone.

*October 2014 Report Prepared by Steve Marshall*

According to Nautical, after the first inspection, in October of 2014, at the request of Mr. Clifford, Steve Marshall, another surveyor from Patton Marine, performed a second

---

[1] This maritime lien foreclosure matter was commenced on December 10, 2013, when Plaintiffs B.M.I. Interior Yacht Refinishing, Inc., BMC Services, Inc., F & J. Yacht Detailing, Inc., and Professional Tank Cleaning, Inc., filed a Verified Complaint against *in rem* Defendant M/Y Claire alleging that the owner of the vessel, Turbulent Marine, Ltd., failed to pay sums due to Plaintiffs for work performed on the vessel, ECF No. [1]. On December 27, 2013, the Court granted Nautical Specialists, Inc.'s Motion to Intervene, which sought intervention based upon Nautical's contention that it was owed money from the M/Y Claire for work performed on the vessel, ECF No. [6].

survey of the M/Y Claire related to items that were not working on the vessel. Nautical contends that Mr. Clifford accompanied Mr. Marshall on that inspection and assisted in preparing the second report of the vessel. On November 26, 2014, Mr. Marshall issued his report wherein, among other things, he reviewed and evaluated the labor and materials supplied by Plaintiff Nautical, as well as the invoices submitted by Nautical for such work, ECF No. [166-1]. Mr. Marshall has been designated by the M/Y Claire as its testifying expert witness, and his expert report has been disclosed.

### B.   Plaintiff Nautical's Motion to Compel

Nautical now seeks to compel Defendant M/Y Claire to provide the entire report originally prepared by Mr. Clifford on two grounds. First, Nautical contends that the Defendant waived its right to not disclose that report under the work product doctrine when Captain Howard read portions of that report to Rob Miles, the agent of Nautical. Second, Nautical contends that because Mr. Clifford aided Mr. Marshall in the second survey of the vessel, Nautical is entitled to obtain Mr. Clifford's first report because the conclusions reached in that report formed, in part, the basis for Mr. Marshall's report. Nautical contends that it is in need of the Report at issue because Mr. Marshall's November 2014 report that was produced to Nautical only reflects temperature readings related to the air conditioner for cooler months of November and December, rather than those set forth in Mr. Clifford's September 2013 Report which captured temperature readings for the presumably warmer month of August.

At the hearing on the issue, Nautical argued that because the Report was created prior to the contemplation of litigation against Nautical, the Report was not work product protected. In addition, Nautical argued that it was inequitable to allow Guy Clifford to rely on assistance from Nautical to conduct his inspection and then not allow Nautical to

3

view the Report.  Finally, Nautical noted that it intended to call Guy Clifford at trial as an expert as to whether the air conditioning system was working properly at the time that Mr. Clifford inspected that system.

In response to Nautical's request to compel production of Mr. Clifford's Report, the Defendant contended that Nautical had failed to establish that any exception to the work product rule existed under the facts of this case.  Defendant further argued that the information sought by Nautical was available from other sources and contended that seeking the information for purposes of impeachment was insufficient to overcome work product protection.  As to the question of whether Mr. Clifford's Report was prepared in anticipation of litigation, at the hearing, Counsel for M/Y Claire asserted that the Mr. Clifford's inspection and subsequent Report were undertaken at the request of M/Y Claire's Counsel to determine deficiencies in the work not paid for by the vessel's owner.

For the following reasons, following an in camera review of the Report, the undersigned concludes that, although M/Y Claire did not waive the work product protection of Mr. Clifford's Report or correspondence related, thereto, Plaintiff Nautical has demonstrated exceptional circumstances necessary to obtain a portion of the facts contained in that Report.

    II.    <u>LAW AND ANALYSIS</u>

        A.    <u>Work Product Doctrine</u>

The work-product doctrine prohibits unwarranted inquiries into the materials and opinions of an attorney and "reflects the strong 'public policy underlying the orderly prosecution and defense of legal claims.'" *United Kingdom v. United States*, 238 F.3d 1312, 1321 (11th Cir. 2001), quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).  The

rationale for the doctrine is the belief that "the privacy of an attorney's course of preparation is ... essential to an orderly working of our system of legal procedure." *Hickman*, at 512. Thus, an attorney must be able to prepare cases without fear that work-product, as reflected in "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways," will be used by the attorney's client's adversaries. *Id.*, at 511.

This doctrine has been codified in Federal Rule of Civil Procedure 26, which provides that "[o]rdinarily, a party may not discover documents and tangible things that are *prepared in anticipation of litigation* or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P 26(b)(3)(A) (emphasis added).

In addition, as pertains to discovery of expert materials, Rule 26 (b) (4) provides:

>  **(4) Trial Preparation: Experts.**
>  . . . .
>
>  **(C) Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:**
>
>  **(i) relate to compensation for the expert's study or testimony;**
>
>  **(ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or**
>
>  **(iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.**
>
>  **(D) Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:**

> (i) as provided in Rule 35(b); or
>
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P 26(b)(4)(C) and (D).  The party asserting the work-product doctrine as a bar to discovery has the burden of establishing that the doctrine is applicable to the particular materials at issue. *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013).

### B.    The Report at Issue is Work Product Protected

As set forth above, Rule 26 requires that, in order for materials to be work product protected, the party asserting such protection bears the burden of demonstrating that the documents were prepared in anticipation of litigation.  To the extent that Nautical argues that it is questionable whether the Clifford Report was prepared in anticipation of litigation because the Report was completed in September 2013, prior to the commencement of this action in December of 2013, that argument fails.

At the outset, the undersigned notes that, generally, courts apply two different tests to determine whether a document is prepared in "anticipation of litigation": the "primary purpose" test, *i.e.*, the primary motivating purpose behind the creation of the document was to aid in possible litigation, or the "because of" test, *i.e.*, it can be fairly said that the document was prepared or obtained because of the prospect of litigation.[2] Under the facts of this case, the record supports a finding that Mr. Clifford's Report

---

[2] See e.g. *Tillman v. C.R. Bard, Inc.*, No. 3:13-cv-222-J-34JBT, 2015 WL 1062182, at *2 (M.D. Fla. March 11, 2015) (discussing difference in "primary purpose" test set forth in *United States v. Davis*, 636 F. 2d 1028, 1040 (5th Cir. Unit A Feb. 1981) and "because of" test discussed in *Milanazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 698 (S.D. Fla. 2007) as those tests are applied in determining whether a document is prepared in anticipation of litigation).

**satisfies both tests.**

**First, in the original Complaint, the Plaintiffs alleged that sometime at the end of July or the beginning of August 2013, counsel for the Plaintiffs started receiving numerous telephone calls from various contractors inquiring about their rights and remedies in the event a vessel owner refused to pay his bills, ECF No. [1] at 2. The Complaint further alleges that on August 26, 2013, Turbulent, the owner of the M/Y Claire, sent out form letters to marine contractors disputing their bills and, on August 27, 2013, Turbulent filed six lawsuits against six contractors to contest their invoices, ECF No. [1] at 3. Thus, it is evident from the Complaint that litigation involving the work performed on the M/Y Claire was contemplated, and in fact initiated, well before the instant action was filed and at the time that the Clifford Report was prepared. This conclusion is not altered by the fact that, at the time the Report was created, Nautical did not believe that litigation would ensue between M/Y Claire and Nautical, because it is clear from the Report that the survey was conducted as to many, if not all, of the contractors who had performed work on the M/Y Claire for purposes of determining whether litigation would ensue or to assist in preparing for potential litigation, including Nautical.**

**Second, at the hearing on this issue, as stated above, Counsel for M/Y Claire asserted that Mr. Clifford's inspection and subsequent Report were undertaken at the request of M/Y Claire's Counsel to determine deficiencies in the work not paid for by the vessel's owner. This contention is consistent with the undersigned's *in camera* inspection of the Report. In particular, the Report, prepared by Guy Clifford and directed to Merle Wood, consists of a twenty-eight page single-spaced survey of work performed by various contractors on the M/Y Claire. The Report references certain invoices**

submitted by the contractors, describes the work performed by the contractors and sets forth Mr. Clifford's opinions regarding that work. Three of the pages specifically pertain to work performed by Plaintiff Nautical, and include Mr. Clifford's evaluation of that work. A portion of that evaluation includes a chart which reflects temperatures taken at various locations on the M/Y Claire by the crew of that vessel. Based upon this review, the undersigned concludes that the primary motivating purpose behind the creation of the Report was to aid in possible litigation, *and* it can also be fairly said that the document was prepared or obtained because of the prospect of litigation. Thus, the document satisfies both "anticipation of litigation" tests.

Further, although generally documents created in the ordinary course of business do not enjoy work product protection because they are not prepared in anticipation of litigation, there is no evidence that the Report was created for any reason other than in anticipation of litigation. There is absolutely no evidence that the M/Y Claire regularly hired marine surveyors to evaluate work performed on the vessel as part of its ordinary course of business. As such, the undersigned concludes that Mr. Clifford's report is protected from disclosure under the work product doctrine because it was created in anticipation of litigation.

### C. Waiver of Work Product Materials

Having determined that the Report at issue is entitled to work product protection, the undersigned now turns to each of the arguments advanced by the Plaintiff Nautical as the basis for overcoming that protection. First, as stated above, Nautical contends that it is entitled to production of the Clifford Report because Defendant waived any work product protection of that document by orally disclosing it to an agent of Nautical, Rob Miles.

8

"Waiver" is the intentional relinquishment of a known right. *Allapattach Services, Inc. v. Exxon Corp.*, 188 F.R.D. 667, 681 (S.D. Fla. 1999). The case law makes clear that a party can waive work-product protection. *United Steelworkers of America, AFL–CIO–CLC v. Ivaco, Inc.*, No. 1:01-CV-0426-CAP, 2002 WL 31932875, at *5 (N.D. Ga. Jan. 13, 2003) (citing *United States v. Nobles*, 422 U.S. 225, 239 (1975)). Voluntary disclosure to an adversary waives the protection of the attorney work product doctrine as to the items disclosed. *United Steelworkers of America,* 2002 WL 31932875, at *5. (citations omitted). Further, although the party seeking work product protection bears the initial burden for establishing that the documents are entitled to such protection, after that initial burden is met, the burden shifts to the party asserting waiver, to show that the party claiming the privilege has waived its right to do so. *Mitsui Sumitomo Ins., Co. v. Carbel*, LLC, No. 09-21208-CIV, 2011 WL 2682958, at *3 (S.D. Fla. July 11, 2011) (citing *Rhoads Indus. v. Bldg. Materials Corp. of Am.*, 254 F.R.D. 216, 223 (E.D. Pa. 2008)).

For the following reasons, the undersigned concludes that the Defendant has not waived the work product protection for the Clifford Report. First, work-product protection of materials may be asserted by either the attorney or the client, and each can waive that immunity, but only as to him or herself, as both the attorney and the client benefit from the privilege. *United Steelworkers of America, AFL–CIO–CLC v. Ivaco, Inc.*, No. 1:01-CV-0426-CAP, 2002 WL 31932875, at *6 (N.D. Ga. Jan. 13, 2003). Indeed, an attorney has an independent interest in privacy of his or her work product, even when the client has waived its own claim, as long as invoking the privilege would not harm the client's interests. *Hobley v. Burge,* 433 F.3d 946, 949 (7th Cir. 2006) (citing Restatement (Third) of the Law Governing Lawyers § 90 cmt. c (2000)). In this case, it is undisputed that the M/Y Claire's Captain, and not M/Y Claire's Counsel, orally disclosed Mr.

9

**Clifford's Report to Nautical by reading portions of that Report to Rob Miles. As such, Defendant M/Y Claire partially waived the work product protection as to itself but did not do so on behalf of M/Y Claire's Counsel. This distinction is particularly appropriate under the facts of this case where Counsel for M/Y Claire contends that Mr. Clifford's inspection and subsequent Report were undertaken at the request of M/Y Claire's Counsel to determine deficiencies in the work not paid for by the vessel's owner. Counsel for M/Y Claire has a privacy interest in the work product information and opinions that were generated at Counsel's direction, and that interest does not conflict with interests of M/Y Claire. As such, Captain Howard did not and could not legally waive Counsel for M/Y Claire's work product protection for the Clifford Report.**

**Second, even if M/Y Claire or its agent were able to waive work product protection of the Clifford Report on behalf of M/Y Claire's Counsel, under the facts of this case, that waiver would be limited to the specific oral disclosures made by Captain Howard, and would not require disclosure of the entire Report. On this point, although the Defendant does not dispute that Captain Howard voluntarily disclosed the Report to Mr. Miles and that the disclosure was not inadvertent, neither the Plaintiff nor the Defendant have been able to inform the Court whether the entire Report was orally communicated to Mr. Miles, or if only portions of that Report were disclosed, and if so, which portions. At the hearing, although Plaintiff asserted that Captain Howard read the Report to Mr. Miles over the telephone, Plaintiff's Counsel represented that Mr. Miles was unable to recall what he was told the Report said, other than concluding that Mr. Miles "didn't have anything to worry about" with respect to the work Nautical performed on the vessel. Although Mr. Miles had been deposed prior to the hearing, neither Party provided the Court with a transcript of his testimony on this issue. In addition, neither Party deposed**

10

**Captain Howard or obtained an affidavit or other statement from him regarding what he orally disclosed to Mr. Miles regarding the Report.[2]  Plaintiff Nautical has therefore failed to meet its burden in establishing that the entire Clifford Report was disclosed by the Defendant to Nautical, thereby waiving the work product protection as to the entire document.**

**Despite the Plaintiff's failure to establish that the whole of the Clifford Report was read to Mr. Miles, Plaintiff seeks to have the entirety of that Report disclosed.  In essence, Nautical claims that by orally disclosing some or any portion of Guy Clifford's Report, the work product protection has been destroyed as to the entire Report.  However, courts have held that due to the sensitive nature of work product materials and the policy behind maintaining their secrecy, generally speaking, when work product protection has been waived, it is limited to the information actually disclosed.  *Howard v. O'Quinn*, 253 F.R.D. 663, 683 (S.D. Fla. 2008).[3]  *Accord, Chick–fil–A v. Exxon Mobil Corp.*,**

---

[2]  Further, based upon the undersigned's *in camera* review of the Report and Mr. Miles' statements regarding Captain Howard's disclosure, the undersigned concludes that it is more likely than not that only portions of the Report were orally disclosed by Captain Howard.  This conclusion is based, in part, on the fact that a portion of the Report contains a six-column chart that reflects various temperature readings taken aboard the vessel.  Given that Mr. Miles did not recollect generally that those readings had been disclosed to him, it seems improbable that Captain Howard specifically read those readings to him, and thus did not disclose the entirety of the Report to Nautical.

[3]   Also, Federal Rule of Evidence 502, Subdivision (a) provides that a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed. The Committee Advisory notes for Rule 502 provide, *inter alia*, that a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary. See, e.g., *In re United Mine Workers of America Employee Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994) (waiver of work product limited to materials actually disclosed, because the party did not deliberately disclose documents in an attempt to gain a tactical advantage). Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and

2009 WL 3763032, No. 08–61422–CIV, at *3 (S.D. Fla. Nov. 10, 2009) (citations omitted) ("[T]he overwhelming majority of persuasive authority from other circuits holds that voluntary disclosure of work product information to an adversary waives work product protection as to that information."); Accord *Murray v, Southern Route Maritime*, No. c12-1854RSL, 2014 WL 1671581, at *3 (W.D. Wash. April 28, 2014) (holding that while a party cannot shield the material which it has already disclosed, where the disclosure is limited, the waiver applies only to the matters disclosed.)

This limitation is particularly adhered to where the disclosure at issue pertains to work product held or created by a nontestifying expert, as in this case. As stated in *Hollinger Intern. Inc. v. Hollinger Inc.*, 230 F.R.D. 508, 522 (N.D.Ill. 2005), "[C]ourts have generally held that partial disclosure of a non-testifying expert's work product does not waive a party's right to withhold production of the expert's undisclosed work product." *Id*. (internal citations omitted). Thus, even where a court finds that a party waived protections afforded to non testifying experts, the waiver may be limited in scope. *Precision of New Hampton Inc. v. Tri Component Prods. Corp.,* No. C12–2020, 2013 WL

---

unfair manner.

In this case, there is no indication that the Defendant has unfairly used the Clifford Report in a manner that warrants a finding that the work product protection has been waived as to the Report. Rather, the fact that the Plaintiff contends that the opinions in the Report may be contrary to the position taken in this litigation is insufficient to establish that it would be "unfair" to permit the Defendant to refuse to disclose the Report based upon work product protection. *See, e.g., Carr v. C.R. Bard*, 297 F.R.D. 328 (N.D. Ohio 2014) (stating "it is one thing to argue that a waiver might be appropriate if a party's insistence on work product protection would be 'unfair' because of some action that party has taken with respect to the protected material . . . and quite another to argue that work product protection is waived if the protected materials tend to undermine an affirmative defense.) (citation omitted). See also, *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (explaining that implied waiver "aim[s] to prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information").

2444047, at *6 (N.D. Iowa, June 5, 2013).[4]

      As discussed above, the only portion of the Clifford Report that the Plaintiff has established was disclosed to Nautical was done so through the oral statements uttered by Captain Howard to Robert Miles which summarized the Clifford Report. By Mr. Miles' own statements, the oral summary provided by Captain Howard in this matter was not very detailed but rather generally consisted of informing Mr. Miles that Nautical had nothing to worry about based on the Report. Such disclosure does not rise to the level of a waiver of work product protection as to the written Report itself. In this regard, this case is distinguishable from *Securities and Exchange Comm. v. Vitesse Semiconductor Corp.*, No. 10 CIV 9239(JSR), 2011 WL 2899082, at` *1 (S.D.N.Y. July 14, 2011), wherein the Court held that oral summaries of work product protected documents that were intentionally disclosed were sufficiently detailed to constitute a waiver of work product protection. In fact, in the *Vitesse* case, the Court noted that waiver of work product protection probably would not apply if the party seeking work product protection had merely provided general impressions of the written interviews without organizing the presentations in a very specific fashion. *Id*. at *3. Accord, *Hollinger Intern. Inc., v. Hollinger Inc.*, 230 F.R.D. 508, 521-22 (N.D. Ill. 2005) (rejecting argument that disclosure of portions of a non-testifying expert's report constituted a waiver of work product

---

[4] The undersigned notes that, as observed in *Murray v. Southern Route Maritime, S.A.*, No. C12–1854RSL, 2014 WL 1671581, at *1–3 (W.D. Wash. April 28, 2014), a number of courts have questioned whether the non-testifying expert privilege under Rule 26(b)(4)(B), can ever be waived. *See Id.* (collecting cases addressing waiver in context of non-testifying expert disclosure). However, based on the facts of this case, the undersigned need not reach the issue that if the facts known or opinions held by a non-testifying expert are intentionally disclosed or used in a way that is contrary to the purpose of the privilege, whether waiver may apply, as the undersigned finds that the Defendant did not waive the work product protection of the Clifford Report.

protection as to the entire report).[5]  In other words, the extent of the Defendant's waiver of any work product protection for the Clifford Report was complete upon the oral disclosure by Captain Howard, and does not require the additional disclosure of the entire written Report that was summarized by Captain Howard. This conclusion makes sense in light of the purpose of the work product privilege to "promote[] the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation." *Westinghouse Elec. Corp. v. Republic of the Phil.*, 951 F.2d 1414, 1428 (3d Cir. 1991) (citations omitted).

In addition, to the extent that Nautical requests production of Guy Clifford's correspondence based on waiver, any such waiver does not open the door to disclosure of all materials or information related to the subject matter of the Report. *See Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1222–23 (4th Cir. 1976) (finding that subject matter waiver does not apply to work product protected materials where disclosure was inadvertent or partial and where no testimonial use was made of the work product); Epstein, The Attorney–Client Privilege and the Work Product Doctrine 1116 (2007) ("disclosure of some work-product materials does not thereby necessarily constitute a

---

[5]  In *Hollinger*, the court found that when the plaintiff disclosed part of its expert's findings, it only waived the protections of Rule 26(b)(4)(B) as to the items actually disclosed. *Id*. The court stated that the partial disclosure of the non-testifying expert's findings "did not automatically forfeit the protection of Rule 26(b)(4)(B) as to the withheld information or place the entirety of his work at issue." *Id*. at 522. In so doing, the court in *Hollinger* stated, "Rule 26(b)(4)(B) is designed to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation." *Id*. at 519 (citing *Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir.1984)). Thus, "[t]he party seeking discovery from nontestifying retained experts faces a heavy burden." *Id*. (citing 8 Wright, Miller & Marcus, Federal Practice and Procedure § 2032 (2d ed.1994)).  The court thus concluded that work product protection had not been waived by the partial disclosure and held that the party seeking disclosure would have to establish the exceptional circumstances required by the applicable Federal Rule 26 (b)(4)(B), pertaining to seeking discovery from nontestifying experts.

waiver permitting discovery of all work product prepared in the same litigation."). In *United Steelworkers of America, AFL–CIO–CLC v. Ivaco, Inc.*, 2002 WL 31932875, *1 (N.D. Ga. Jan. 13, 2003), for example, the court determined that voluntary disclosure of a letter that otherwise would have been protected by the work-product doctrine, waived any such protection for the letter itself. In so finding, the court explained that voluntary disclosure to an adversary waives the protection of the work-product doctrine to the items disclosed. *Id*. at *5 (citing *In re Howardhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993); *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988)). The court noted however, that "disclosure of some documents generally does not destroy work-product protection for other documents relating to the same subject matter." *United Steelworkers*, 2002 WL 31932875 at *5 (citing *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997)). Thus, the court concluded, even if plaintiffs waived work-product protection, the waiver did not extend beyond that letter itself. *Id*. at *5.

Accordingly, even if the Court found that Captain Howard's oral disclosure of a portion of the Clifford Report resulted in a partial waiver of the work product doctrine, such a waiver does not extend beyond the specific oral disclosures, and such disclosures do not require that the entire Report or other documents and correspondence related to the Report be disclosed to Plaintiff Nautical.

> D. **Plaintiff Nautical is Not Entitled to the Clifford Report Because That Report Did Not Provide the Facts, Data or Assumptions Considered by Mr. Marshall**

Similarly, Nautical is not entitled to the Clifford Report based upon Nautical's contention that Steve Marshall, another surveyor from Patton Marine, relied upon that Report in drafting his own expert Report. This is so because the record belies Nautical's contention that Mr. Marshall relied on the Clifford Report or Mr. Clifford's facts or

15

opinions in reaching his own conclusions or in drafting his own report.  Rather, in the November 26, 2014 Report, Mr. Marshall notes that the judgments, conclusions and recommendations in the Report are expressions of Mr. Marshall's opinions and are based on his skill, training and experience after a routine visual examination of the vessel's systems and discussions with owners, crew and others familiar with the vessel, ECF No. [166-1] at 13.  In addition, the Report states that the reported measurements and capacities were obtained from the vessel's/yacht's papers/documentation and/or from other published sources. *Id*.  Further, at the hearing, the Plaintiff conceded that Mr. Marshall has represented that he has not seen Mr. Clifford's earlier report.  Accordingly, there is no evidence in the record that Mr. Clifford's September 17, 2013 Report was considered by Mr. Marshall in crafting his Report or in arriving at his opinions, conclusions, recommendations or judgments.  As such the Plaintiff is not entitled to Mr. Clifford's Report based upon the assertion that Mr. Marshall relied upon that Report in arriving at his opinions.

      E.    <u>Plaintiff Nautical is Only Entitled to Portions of Guy Clifford's Report as a Non-Testifying Expert</u>

Finally, the Parties do not dispute that Mr. Clifford is an expert who has *not* been designated as a testifying expert by the Defendant.[6]  As set forth above, pursuant to Rule 26 (b)(4)(D), typically, the facts known or opinions held by an expert, who is retained by a party only for trial preparation and not for purposes of testifying, are not discoverable absent a showing of exceptional circumstances and where it is impracticable for the

---

[6] The undersigned notes that Mr. Guy Clifford has been listed on *Nautical's* Amended Witness List as a fact witness who will testify "regarding his observations inspections and opinions regarding the 320,000 BTU chilled water system installed by Nautical aboard the M/Y Claire." ECF No. 294 at 4.  The undersigned expresses no opinion regarding testimony by Mr. Clifford.

party to otherwise obtain facts or opinions. Generally, parties seeking to show exceptional circumstances under Rule 26(b)(4)(B) carry a heavy burden. *Spirit Master Funding, LLC, v. Pike Nurseries Acquisition, LLC*, 287 F.R.D. 680, 684 (N.D. Ga. 2012) (citations omitted). As stated by the Court in *Cooper v. Meridian Yachts, Ltd.*, No. 06-61630-CIV, 2008 WL 2229552, *5 (S.D. Fla. May 28, 2008),

> Courts considering the applicability of the "exceptional circumstances" exception to the protections of Rule 26(b)(4)(B) have repeatedly held that the existence of either of two situations warrants the imposition of the exception: (1) the object or condition observed by the non-testifying expert is no longer observable by an expert of the party seeking discovery, or (2) although it is possible to replicate expert discovery on a contested issue, the cost of doing so is "judicially prohibitive."[7]

*Id.* at *5 (collecting cases).

Based upon the facts presented at the hearing in the case sub judice, the undersigned concludes that Nautical has demonstrated the exceptional circumstances necessary to overcome the work product protection afforded to non-testifying experts, as to limited aspects of Mr. Clifford's Report. Specifically, Nautical contends that it is in need of Clifford's Report so that it may obtain information regarding temperature readings of the yacht taken in warmer weather. Nautical asserts that such information is necessary to determine if the air conditioning system was working during the summer months, after Nautical had completed work on the system.

As stated above, a portion of the Clifford Report includes a chart which reflects temperatures taken at various locations on the M/Y Claire by the crew of that vessel. The temperature readings themselves appear to be factual in nature and thus do not reveal

---

[7] Former Rule 26(b)(4)(B) was renumbered 26(b)(4)(D) in the 2010 Amendments to the Federal Rules of Civil Procedure.

17

any opinion work product of either Mr. Clifford or Counsel for the M/Y Claire. While it is not entirely clear if the temperature readings taken in September as reflected in the Clifford Report vary greatly from those taken in November by Mr. Marshall, and whether any variance in those temperatures is of great significance in this case, it does appear that Nautical is unable to obtain those readings from another source. Thus, the object or condition observed by the non-testifying expert is no longer observable by an expert of the party seeking discovery. As such, although it is somewhat of a close call, the undersigned finds that Nautical has demonstrated that exceptional circumstances exist to warrant disclosure of the temperature readings from the M/Y Claire contained in Mr. Clifford's Report.

As to the other information contained in the Report, except for the temperature readings discussed above, the Plaintiff has failed to demonstrate the exceptional circumstances necessary to overcome the work product privilege for non-testifying experts. There is no indication that Plaintiff Nautical is unable to obtain the other information contained in the Clifford Report. The undersigned thus determines that Plaintiff Nautical is not entitled to obtain the other portions of Mr. Clifford's Report. Finally, the undersigned notes that discovery is closed and was closed at the time that Plaintiff Nautical sought to compel production of Mr. Clifford's Report, and Nautical has advanced no exceptional circumstances that would warrant reopening discovery as to Mr. Clifford's September 2013 inspection of the M/Y Claire.

Accordingly, on or before July 22, 2015, Defendants shall only produce that portion of Mr. Clifford's September 17, 2013 Report that pertains to Nautical Specialists which reflects the temperature readings taken on September 18, 2013, as displayed in the chart on page 19 of Mr. Clifford's Report. No other portion of Mr. Clifford's Report

need be disclosed.

### III.     CONCLUSION

Accordingly, for the reasons set forth above, it is

**ORDERED AND ADJUDGED** that Plaintiff Nautical's request that the September 17, 2013 Report prepared by Guy Clifford be produced to Plaintiff is Granted, in part. On or before July 22, 2015, Defendants shall produce the portion of Mr. Clifford's September 17, 2013 Report that pertains to Nautical Specialists which reflects the temperature readings taken on September 18, 2013 as displayed in the chart on page 19 of Mr. Clifford's Report. No other portion of Mr. Clifford's Report need be disclosed.

**DONE AND ORDERED** in chambers in Miami, Florida on July 15, 2015.

*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**


Copies furnished via CM/ECF to:
The Honorable Kathleen M. Williams
        United States District Judge
All counsel of record